IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No.: 5:21-CV-415

| | |
|---|---|
| BRENDA GEIGER, CAMILA DAVALOS, CARISSA ROSARIO, CLAUDIA SAMPEDRO, DENISE 'MILANI' TRLICA, DESSIE MITCHESON, JAIME EDMONDSON LONGORIA, JESSICA BURCIAGA, JESSA HINTON a/k/a JESSICA HINTON, JOHN COULTER, KARA MONACO, LINA POSADA, MARIANA DAVALOS, MONICA LEIGH BURKHARDT, and ROSA ACOSTA, ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) | **COMPLAINT** |
| ) | |
| v. ) | **JURY TRIAL DEMANDED** |
| ) | |
| AMBIS 1 NIGHT CLUB INC. d/b/a AMBIS 1 NIGHT CLUB and RONNIE WOODALL, ) ) ) | |
| ) | |
| Defendants. ) | |

Plaintiffs Brenda Geiger, Camila Davalos, Carissa Rosario, Claudia Sampedro, Denise 'Milani' Trlica, Dessie Mitcheson, Jaime Edmondson Longoria, Jessica Burciaga, Jessa Hinton a/k/a Jessica Hinton, John Coulter, Kara Monaco, Lina Posada, Mariana Davalos, Monica Leigh Burkhardt, and Rosa Acosta (collectively, "Plaintiffs"), file this Complaint against Ambis 1 Night Club Inc. d/b/a Ambis 1 Night Club and Roonie Woodall (collectively "Defendants"), and respectfully allege as follows:

## BACKGROUND

1.     This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional models, to promote their night club, Ambis

1 Night Club, located in Raleigh, North Carolina ("Ambis 1" or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of privacy - misappropriation; d) violation of North Carolina's Unfair & Deceptive Trade Practices Act, N.C. Gen. Stat § 75-1.1 *et seq.*; e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendant(s) from using any of their Images in any way and through any medium.

## JURISDICTION & VENUE

4.       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 15 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, defendant Ambis 1 Night Club, Inc is a domestic corporation formed under the laws of the state of North Carolina, with its principal place of business located at 4000 Atlantic Ave Ste 180, Raleigh, North Carolina 27604., which operates Ambis 1 Night Club, which is located 4000 Atlantic Ave Ste 180, Raleigh, North Carolina 27604.

8.      Venue is proper in the United States District Court for the Eastern District of North

- 2 -

Carolina because Defendants' principal place of business is located in Raleigh, North Carolina.

9.     A significant portion of the alleged causes of action arose and accrued in Raleigh, North Carolina and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Raleigh, North Carolina.

## PARTIES

*Plaintiffs*

10.     Plaintiff Brenda Gieger ("Gieger") is a well-known professional model, and a resident of Ononodaga County, New York.

11.     Plaintiff Camila Davalos ("Davalos") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12.     Plaintiff Carissa Rosario ("Rosario") is a well-known professional model, and a resident of Broward County, Florida.

13.     Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

14.     Plaintiff Denise 'Milani' Trlica ("Milani") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

16.     Plaintiff Jaime Edmondson Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

17.     Plaintiff Jessica Burciaga ("Burciaga") is a well-known professional model, and a resident of Fulton County, Georgia.

18.     Plaintiff Jessa Hinton a/k/a Jessica Hinton ("Hinton") is a well-known professional

- 3 -

model, and a resident of Los Angeles County, California.

19.    Plaintiff John Coulter ("Coutler") is a well-known professional model, and a resident of Los Angeles County, California.

20.    Plaintiff Kara Monaco ("Monaco") is a well-known professional model, and a resident of Orange County, Florida.

21.    Plaintiff Lina Posada ("Posada") is a well-known professional model, and a resident of San Bernardino County, California.

22.    Plaintiff Mariana Davalos ("Davalos") is a well-known professional model, and a resident of Los Angeles County, California.

23.    Plaintiff Monica Leigh Burkhardt ("Burkhardt") is a well-known professional model, and a resident of Suffolk County, New York.

24.    Plaintiff Rosa Acosta ("Acosta") is a well-known professional model, and a resident of Los Angeles County, California.

*Defendants*

25.    Defendant Ambis 1 Night Club Inc. is a domestic limited liability corporation formed under the laws of the state of North Carolina and registered to conduct business in North Carolina.  At all times relevant to this action, Ambis 1 Night Club Inc. operated Ambis 1 Night Club in Raleigh, North Carolina.

26.    Defendant Ronnie Woodall is a Member and President of Defendant Ambis 1 Night Club Inc. who himself, upon information and belief, was the natural person who directed, supervised, participated in, and is responsible for the wrongful acts and omissions complained of herein.

27.    Service of process may be perfected upon Defendant Ambis 1 Night Club Inc. by

- 4 -

serving the registered agent for service of process, Ronnie Woodall, who can also be served in his capacity as an individual Defendant at 306 E Morgan Street, Benson, North Carolina 27504.

## FACTUAL ALLEGATIONS

28.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

29.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

30.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

31.     In the case of each Plaintiff, this apparent claim was false.

32.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

33.     No Plaintiff has ever received any remuneration for Defendant's improper and illegal use of their Images, and Defendant's improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

34.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their

brand.

35.     In other cases, Defendants misappropriated Plaintiffs' Images from other sources through unlawful violation of copyrights and or licenses that were not and never were held by Defendants.

***Plaintiffs' Individual Backgrounds and Careers***

36.     Plaintiff Geiger is a professional model and actress who performed with eight-time Grammy nominee rapper Lil Wayne in a music video for two-time Grammy nominee singer Keri Hilson. She is most known for her work in Glamour Magazine and her appearance on "The Howard Stern Show" in a "Miss HTV March" contest. Geiger has appeared in numerous magazines such as *Show, Maxim* and *Raw*, and has modeled for several product campaigns such as Primitive Clothing, where she currently has her own line of custom skateboard decks.

37.     That we know of, Geiger is depicted in the photos in Exhibit "A" to promote Ambis 1 on its Facebook page. These Images were intentionally altered to make it appear that Geiger was either a stripper working at Ambis 1, that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

38.     Geiger has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

39.     Plaintiff Davalos is a model whom by the time was 18, her career was already established in Colombia as one of the most famous and successful models there. At age 22, Ms. Davalos became the face of the world famous *Besame* lingerie line and was in high demand in the United States. Since then Ms. Davalos has earned a reputation as a Latin Super Model, appearing in hundreds of magazine editorials, catalogues, runway shows and covers. Some of her clients

- 6 -

include *Maxim Magazine, Imagen Magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans, and Satori.*

40.     That we know of, Davalos is depicted in the photos in Exhibit "B" to promote Ambis 1 on its Facebook page. These Images were intentionally altered to make it appear that Davalos was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

41.     Davalos has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

42.     Plaintiff Rosario is a model, spokesperson, and businesswoman. She has modeled in commercials for Budweiser and Comcast, and is a spokesperson for Monster Energy Drinks, Protein World, and Budweiser. Rosario also has her own perfume company line. She is well known in the Social Media world, with over 1.6 million Facebook followers, over 1 million Instagram followers, and over 42.3 thousand Twitter followers.

43.     That we know of, Rosario is depicted in the photo in Exhibit "C" to promote Ambis 1 on its Facebook page. This Image was intentionally altered to make it appear that Rosario was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

44.     Rosario has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendant's unauthorized use of her Image, and has suffered, and will continue

to suffer, damages as a result of same.

45.     Plaintiff Sampedro is a Cuban born model, mother, and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, and magazine editorials. She has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. Sampedro is in the Social Media Influencers top class with over a million Instagram followers and a further combined half million fans on Facebook and Twitter. Sampedro has three children, and is married to former Green Bay's star defensive end Julius Peppers.

46.     That we know of, Sampedro is depicted in the photos in Exhibit "D" to promote Ambis 1 on its Facebook page.  These Images were intentionally altered to make it appear that Sampedro was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

47.     Sampedro has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendant's unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

48.     Plaintiff Milani is the world's most famous pinup model, who is frequently named one of the most searched women on the internet. At one point, her self-titled website was the most popular model website in the world. Milani also became the winner of Miss Bikini World 2007. At 21, Milani was given an opportunity to model for SPORTSbyBROOKS as a sports model and posed for such publications as PinupFiles.com. In 2009, Milani was selected as the 99th most desired woman in the world by *Askmen Magazine*. In 2011, she was ranked in the 5th position in

- 8 -

championship NPC Excalibur Bikini held in Culver City, California. Similarly, in the year 2013, she was one of ten (10) most desirable women in the world. Milani's social media reach has hit over 660 thousand followers on Instagram, 6.3 million Facebook likes, and over 126 thousand followers on Twitter.

49.     That we know of, Milani is depicted in the photo in Exhibit "E" to promote Ambis 1 on its Facebook page. This Image was intentionally altered to make it appear that Milani was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

50.     Milani has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

51.     Plaintiff Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental. Mitcheson entered *Maxim* magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned *Maxim* magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on *Maxim's* "Hot 100" list. She has graced the pages of multiple issues of *Maxim*, including a three-page spread, two centerfolds, and the cover for the May 2014 "Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram

followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.

52.     That we know of, Mitcheson is depicted in the photo in Exhibit "F" to promote Ambis 1 on its Facebook page. These Images were intentionally altered to make it appear that Mitcheson was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

53.     Mitcheson has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

54.     Plaintiff Longoria comes from a family of police officers. She graduated from Florida Atlantic University with a degree in Criminal Justice in 2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting to become a cheerleader for the Miami Dolphins. Longoria and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Longoria was Playmate of the Month in the January 2010 issue of *Playboy*. She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song," and numerous other television, print, radio, and online outlets. Longoria and her husband, MLB Superstar Evan Longoria have 2 children.

55.     That we know of, Longoria is depicted in the photo in Exhibit "G" to promote Ambis 1 on its Facebook page. This Image was intentionally altered to make it appear that Longoria was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

- 10 -

56.     Longoria has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

57.     Plaintiff Burciaga is a model and a business owner from Orange County, CA. She is of Mexican, French, and Irish descent. Burciaga began modeling in 2005 when she submitted a few photos to *Stuff Magazine*. The magazine responded by flying her out to New York for a photo shoot. After Burciaga's first photo shoot, she won *Stuff Magazine's,* "Neighborhood Knockout," contest.  The prize was $5,000, a 4-page spread in the magazine, and an appearance as a ring girl in EA Sports *Fight Night Round* 3 video game. Burciaga's popularity rose quickly and she began appearing in various magazines including *Playboy, Maxim, Import Tuner, Modified Mag, Performance Auto & Sound, Show Latina, Lowrider Magazine*, and many others. Burciaga was the *Playboy* Playmate of the Month for February 2009 and has appeared as herself in several episodes of the reality TV series *The Girls Next Door*. Recently she has been focusing on various business ventures including a women's online clothing boutique, www.SailorandSaint.com. Burciaga's social media reach has surpassed 1.6 million followers on Instagram, over 49 thousand Facebook likes, and over 192 thousand followers on Twitter.

58.     That we know of, Burciaga is depicted in the photo in Exhibit "H" to promote Ambis 1 on its Facebook page. These Images were intentionally altered to make it appear that Burciaga was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

59.     Burciaga has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no

remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

60.     Plaintiff Hinton was discovered by a talent manager at a wedding at 14. By 16 she locked in three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the *Palms Hotel & Casino's* ad campaign. She then pursued TV personality roles hosting for *Victory Poker*, and *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also attained spokesmodel roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, and *Protein World*. She has ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue,* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

61.     That we know of, Hinton is depicted in the photo in Exhibit "I" to promote Ambis 1 on its Facebook page. This Image was intentionally altered to make it appear that Hinton was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that she was otherwise associated or affiliated with Ambis 1.

62.     Hinton has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

63.     Plaintiff Coulter was born in Arizona. He spent two years studying illustration on a full art scholarship at the University of Arizona before continuing his studies at the prestigious Art Center College of Design in Pasadena. Coulter also pursued performing arts, which led him to "The Happiest Place on Earth". At Disneyland, he worked both as an artist in the entertainment art department and moonlighted as Prince Charming in the Main Street Electrical Parade before going on to play other Disney characters. One of the highlights was playing Tarzan in the opening cast of Tarzan Rocks. His princely charm also took him to Tokyo Disneyland, where he continued to perform several roles. Coulter's modeling career has lasted over 20 years leading him to New York and Europe where he worked with renowned photographers Ellen Von Unwerth and David Lachapelle. He shot a Jeans Campaign with Cindy Crawford and a MAC Cosmetics campaign with Mary J. Blige and Lil' Kim. He has walked the runways with Naomi Campbell, Kate Moss, Marcus Schenkenberg and Tyson Beckford and has appeared in television commercials with Paris Hilton, Heidi Klum, Kristen Chenoweth, and Karolina Kurkova. Coulter has been on Tyra Bank's America's Next Top Model, in a Madonna video directed by Guy Ritchie, and can be seen on the Britney Spears' Blackout Album as the controversial priest. He is most recognizable with his clothes off, gracing the packaging and ads for Joe Boxer, Fruit of the Loom, Murano, Undergear and International Male. His fine arts background has manifested itself in many areas such as costuming, photo and fashion styling, as well as hair and makeup.

64.     That we know of, Coulter is depicted in the photo in Exhibit "J" to promote Ambis

1 on its Facebook page. This Image was intentionally altered to make it appear that Coulter was either a stripper working at Ambis 1 that he endorsed Ambis 1, or that he was otherwise associated or affiliated with Ambis 1.

65.     Coulter has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of his Image, and has suffered, and will continue to suffer, damages as a result of same.

66.     Plaintiff Monaco is an American model, actress, and reality TV star.  She has appeared in such publications as *FHM* and *Men's Fitness* magazine. Monaco has worked at Disney World, where as one of the performers portraying "Cinderella" and "Snow White" in the resort. Her connection with Playboy began when she was chosen as one of *Playboy's* "Sexiest Bartenders 2004." She then appeared on the cover of *Playboy* "Special Edition Girls of Summer" in August 2004. Monaco was Playmate of the Month in June 2005 and in June 2006, Playmate of the Year. She appeared in episodes *The Girls Next Door* and in the 2006 "Playmates at Play" swimsuit calendar, shot in Las Vegas. Monaco was a contestant on CBS's hit reality TV show, BigBrother. She has over 32.4 thousand Instagram followers and 72.5 thousand Twitter followers.

67.     That we know of, Monaco is depicted in the photo in Exhibit "K" to promote Ambis 1 on its Facebook page. This Image was intentionally altered to make it appear that Monaco was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that he was otherwise associated or affiliated with Ambis 1.

68.     Monaco has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue

- 14 -

to suffer, damages as a result of same.

69.     Plaintiff Posada is a fashion model and designer. A native of Colombia, Posada is best known as a model for the Besame and Espiral lingerie collections. Posada has also modeled for Paradizia Swimwear, Babalu Swimwear, Irgus Swinwear, Ujeans, as well as many others. She currently has 95.1 thousand Instagram followers, 2.99 thousand YouTube subscribers, 8,931 Facebook followers, and over 5.6 thousand Twitter followers.

70.     That we know of, Posada is depicted in the photo in Exhibit "L" to promote Ambis 1 on its Facebook page. This Image was intentionally altered to make it appear that Posada was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that he was otherwise associated or affiliated with Ambis 1.

71.     Posada has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

72.     Plaintiff Davalos established a modeling career in Colombia as one of the most famous and successful models in all of Latin America by the age of 18. Davalos was the face of Nacar cosmetics and has appeared in Maxim magazine, Imagen magazine, Besame, SOHO TV, Rumbas de la Ciudad, La Granja Tolima, Kiss Catalogue, Deluxe Jeans, Revista Soho, SCRIBE, Coed People, La Gemela mas Dulce, Para Hombre, Spiritual Jeans and Satori. Davalos is constantly listed in "The top sexiest people in the world" lists and whether solo or teamed up with her twin sister is constantly in demand. Davalos' worldwide identity has continued to grow and her earning capabilities have increased dramatically with her 563,884 Instagram, Twitter, and Facebook followers.

73.     That we know of, Davalos is depicted in the photos in Exhibit "M" to promote Ambis 1 on its Facebook page. These Images were intentionally altered to make it appear that Davalos was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that he was otherwise associated or affiliated with Ambis 1.

74.     Davalos has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

75.     Plaintiff Burkhardt worked as a bartender and dental assistant prior to being encouraged by her childhood friend and fellow Playboy Playmate, Courtney Culkin, to try out. She has modeled for the famous men's magazine in various newsstand special editions (she was featured on the cover of "Playboy's College Girls" in September, 2005). She was the Playboy Cyber Girl of the Week for August 29, 2005 and the Cyber Girl of the Month for December, 2005. Leigh was subsequently named Cyber Girl of the Year for 2006. Moreover, she was the Playmate of the Month in the March, 2006 issue of Playboy and graced the cover of the August, 2006 issue. Leigh has appeared in several Playboy videos and on a handful of episodes of the reality TV series, The Girls Next Door (2005). She has acting roles in the movies, The Duel (2006), The Pool Boys (2009), The Gentleman (2007) and Road Raiders (2000). Monica has popped up as an extra not only in Spider-Man 3 (2007), but also on episodes of both Entourage (2004) and CSI: Miami (2002).

76.     That we know of, Burkhardt is depicted in the photo in Exhibit "N" to promote Ambis 1 on its Facebook page. This Image was intentionally altered to make it appear that Burkhardt was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that he was

otherwise associated or affiliated with Ambis 1.

77.     Burkhardt has never been employed at Ambis 1, has never been hired to endorse Ambis 1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

78.     Plaintiff Acosta started her classic ballet studies at the age of four at the Centro de la Cultura in Santiago, Dominican Republic. She later moved on to the ICA, (Instituto de Cultura y Arte), where she excelled as one of the most gifted students of the academy. After graduating with honors from the ICA and the Ballet School of Norma Garcia with a Bachelor in Art with mention to Classic Ballet, she became part of the Dominican Nacional Ballet as the youngest soloist member in 2002. Partaking in all major classic and modern shows in the Dominican Republic, she is nominated twice by the Secretaria de Estado de la Juventud for her work in the category of Cultural Development. She initiated her modeling career in 2004, participating in magazines and television for prestigious Dominican enterprises. Acosta moved to the United States in 2006 where her career took a new turn, distinguishing herself in several areas of the modeling world, featuring in magazines, radio, television programs and commercials and numerous music videos. She has over 36 thousand Facebook followers, over 1.6 million Instagram followers, and over 291 thousand Twitter followers.

79.     That we know of, Burkhardt is depicted in the photo in Exhibit "O" to promote Ambis 1 on its Facebook page. These Images were intentionally altered to make it appear that Acosta was either a stripper working at Ambis 1 that she endorsed Ambis 1, or that he was otherwise associated or affiliated with Ambis 1.

80.     Acosta has never been employed at Ambis 1, has never been hired to endorse Ambis

- 17 -

1, has never been otherwise associated or affiliated with Ambis 1, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendant's Business Activities and Misappropriation***

81.     Defendants operates Ambis 1, where they are engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

82.     In furtherance of its promotion their promotion of Ambis 1, Defendants own, operate, and control Ambis 1 social media accounts, including its Facebook, Twitter, and Instagram accounts.

83.     Defendants used Ambis 1 Facebook, Twitter, and Instagram accounts to promote Ambis 1, and to attract patrons.

84.     Defendants did this for their own commercial and financial benefit.

85.     Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Ambis 1, endorsed Ambis 1, or was otherwise associated or affiliated with Ambis 1.

86.     Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Ambis 1 to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

87.     Defendants were well aware that none of the Plaintiffs have ever been affiliated

- 18 -

with or employed by Ambis 1, and at no point have any of the Plaintiffs ever endorsed Ambis 1, or otherwise been affiliated or associated with Ambis 1.

88.     All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

89.     Defendants have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

90.     Plaintiffs have never received any benefit from Defendant's unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

91.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

92.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

93.     Most licenses to use a model's image are for one, two, or three year terms; but almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

94.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential

- 19 -

customers that Plaintiffs worked at or endorsed Ambis 1.

95. Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

96. In addition, Plaintiffs allege that any the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Ambis 1.

97. At no point was any Plaintiff ever contacted by any Defendants, or any representative of any Defendants, to request the use of any of Plaintiffs' Images.

98. No Defendants ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

99. No Defendants ever paid any Plaintiff for its use of her Images on any promotional materials, including Ambis 1's website, Twitter, Facebook, or Instagram accounts.

100. Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

101. Defendants' use of Plaintiffs' Images in some cases was also in violation of copyrights and/or licenses held by others, who had lawful relationships with Plaintiffs based on the standard business practices in the modeling industry.

102. Defendants' breaches of copyrights and/or licenses held by others likewise had the purpose and effect of injuring Plaintiffs in the ways complained of herein, as Plaintiffs were foreseeable victims of harm from Defendants' breaches.

## FIRST CAUSE OF ACTION
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

145. The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or

affiliated with The Club, nor had they agreed to appear in Ambis 1 advertisements.

146. Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

147. Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Ambis 1.

148. Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

149. Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Ambis 1, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Ambis 1

150. Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Ambis 1.

151. Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Ambis 1, and the goods and services provided by Ambis 1.

152. Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)

153. Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Ambis 1, or worked at, sponsored, or approved of Ambis 1 goods, services or commercial activities.

154. This was done to promote and attract clientele to Ambis 1, and thereby generate

revenue for the Defendants, for Defendant's commercial benefit.

155.    Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Ambis 1, nor worked at, sponsored, or approved of Ambis 1 s goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or affiliation with Ambis 1.

156.    Defendant knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Ambis 1.

157.    Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Ambis 1 and the goods and services provided by Ambis 1.

158.    Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
### (Common Law Right of Privacy - Misappropriation)

159.    Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

160.    Defendants misappropriated Plaintiffs' likenesses by publishing their Images on Ambis 1's website or related social media accounts as part of Defendants' advertising campaign.

161.    Ambis 1's website and social media accounts were designed to advertise and attract business to Ambis 1 and generate revenue for Defendants.

162.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness

- 22 -

on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

163.     Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

164.     Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

165.     Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Ambis 1.

166.     At no point did any Defendants ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

167.     Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

168.     At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

169.     Defendants' misappropriation of Plaintiffs' Images in some cases was in violation of copyrights and licenses lawfully held by others, and Defendants' lack of respect for those rights was likewise a proximate cause of the harm done to Plaintiffs from Defendants' misappropriation of their Images.

170.     Plaintiffs have been damaged in amounts to be proved at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of North Carolina's Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §**

171.    Defendants operated Ambis 1's website and social media accounts in order to promote Ambis 1, to attract clientele thereto, and to thereby generate revenue for Defendants.

172.    As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, were in commerce, in that they involved a business activity and the day-to-day activities and affairs of Defendants in North Carolina.

173.    Defendants published Plaintiffs' Images on Ambis 1's website and social media accounts to create the false impression that Plaintiffs were either strippers working at Ambis 1, endorsed Ambis 1, or were otherwise affiliated, associated, or connected with Ambis 1.

174.    As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with Ambis 1.

175.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were unfair, in that they were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers in North Carolina.

176.    Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public were deceptive, in that they possessed the tendency or capacity to mislead, or created the likelihood of deception, affecting members of the public in North Carolina and thereby causing injury to Plaintiffs.

177.    Upon information and belief, members of the public relied upon and were in fact deceived by Defendants' false advertising, misrepresentations, and breaches of their duties to Plaintiffs and the public.

178.    Defendants thus engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce in the state of North Carolina, and caused injury to the Plaintiffs as complained of herein.

- 24 -

179.	Defendants' advertising practices offend the public policy of North Carolina insofar as they constitute misappropriation of Plaintiffs' property rights in their own Images, breaches of copyrights and/or licenses held by others, and invasion of Plaintiffs' privacy, for Defendants' commercial benefit.

180.	Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Ambis 1.

181.	Defendants' advertising practices cause substantial injury to consumers and the Plaintiffs by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with Ambis 1.

182.	There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

183.	As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on its website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

184.	As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial.

185.	 Plaintiffs are entitled to treble damages pursuant to N.C.G.S. Section 75-1.

186.	Plaintiffs are further entitled to an award of attorney's fees against and taxed to Defendants pursuant to N.C.G.S. Section 75-16.1

## SIXTH CAUSE OF ACTION
### (Defamation)

187.	As detailed throughout this Complaint, Defendants have published altered Images

- 25 -

of Plaintiffs in order to promote Ambis 1 to the general public and potential clientele.

188. Defendants' publication of said Images constitutes a representation that Plaintiffs was either employed by Ambis 1, that they endorsed Ambis 1, or that they had some affiliation with Ambis 1.

189. None of these representations were true, and violated Plaintiffs' rights to their images as well as copyrights and licenses lawfully held by others.

190. In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Ambis 1 or endorsed Ambis 1.

191. Defendants were at least negligent in publishing Plaintiffs' Images because they knew, or should have known, that Plaintiffs were not employed by Ambis 1, had no affiliation with Ambis 1, had not consented to the use of their Images, and had not been compensated for the use of their Images.

192. In the alternative, Defendants published the Images of Plaintiffs with actual malice, and their acts were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs, because the Defendants knew that Plaintiffs were not employed by Ambis 1, had no affiliation with Ambis 1, had not consented to the use of their Images, and had not been compensated for the use of their Images.

193. Despite Defendants' knowledge and reckless disregard of the true facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

194. Defendants' publication of Plaintiffs' Images constitutes defamation *per se* under North Carolina law because said publication falsely accuses Plaintiff of having acted in a manner

– *i.e.*, working as a stripper and/or endorsing a strip club - which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

195.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because said publication would tend to impeach and injure each Plaintiff in her trade, business, and profession as a professional model.

196.    This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

197.    Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under North Carolina law because, insofar as said publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

198.    Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence, Gross Negligence, and *Respondeat Superior*)

223.    Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, copyrights, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

- 27 -

224. Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

225. Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

226. Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

227. Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, copyrights, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

228. Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and North Carolina law, were not violated. Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees and agents.

229. Defendants breaches were gross and wanton, evidencing a reckless disregard for the rights of Plaintiffs.

230. Defendants' breaches were the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

231. As a result of Defendants' negligence and gross negligence, Plaintiffs have suffered

- 28 -

damages and are entitled to recover compensatory and punitive damages from the Defendants in an amount to be determined at trial.

**EIGHTH CAUSE OF ACTION**
**(Conversion)**

232.    Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

233.    By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain.

234.    As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

**NINTH CAUSE OF ACTION**
**(Unjust Enrichment)**

235.    As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Ambis 1 to the general public and potential clientele.

236.    Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Ambis 1 or endorsed Ambis 1.

237.    Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

238.    Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

239.    Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because said publication has assisted Defendants in attracting clientele to Ambis 1.

240.    Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to said exploitation is

unjust.

241.     As such, Plaintiffs have been damaged in an amount to be determined at trial.

**TENTH CAUSE OF ACTION**
**(Quantum Meruit)**

242.     Plaintiffs are each internationally known models who earn their livings appearing in, *inter alia*, commercials, advertisements, and publications on behalf of companies and brands.

243.     Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

244.     Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Ambis 1, endorse Ambis 1, or are otherwise affiliated with Ambis 1, Defendants have not compensated Plaintiffs.

245.     Plaintiffs are therefore entitled to reasonable compensation for Ambis 1's unauthorized use of their Images.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

**PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For the Defendants to be adjudged jointly and severally liable to Plaintiffs upon Plaintiffs' first through tenth causes of action;

(b) For an award of actual damages to be paid by Defendants to Plaintiffs, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(c) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images for any purpose;

- 30 -

(d) For punitive damages and treble damages under the Lanham Act, 15 U.S.C. § 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16;

(e) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117, and the North Carolina Unfair and Deceptive Trade Practices Act, § 75-16.1; and

(f) For such other and further relief as the Court may deem just and proper.

Respectfully submitted this 13th day of October, 2021.

BY: /s/ John V. Golaszewski
JOHN V. GOLASZEWSKI
N.Y. Bar No. 4121091
THE CASAS LAW FIRM, P.C.
1740 Broadway, 15th Floor
New York, NY 10019
john@casaslawfirm.com
T: 646-872-3178
F: 855-220-9626
*Attorneys for Plaintiffs*

BY: /s/ Matthew R. Gambale
MATTHEW R. GAMBALE
N.C. Bar No. 43359
OSBORN GAMBALE BECKLEY & BUDD PLLC
721 W. Morgan Street
Raleigh, North Carolina 27603
matt@counselcarolina.com
T: 919.373.6422
F: 919.578.3733
*Local Civil Rule 83.1(d) Attorneys for Plaintiffs*

- 31 -